## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

TIARA MONDS,

          Plaintiff,

v.

GC PARTNERS, INC., *individually and d/b/a* GOLDEN CORRAL,

          Defendant.

Case No. _____
**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Tiara Monds ("**Plaintiff**" or "**Ms. Monds**"), by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant GC PARTNERS, INC., *individually and d/b/a* GOLDEN CORRAL ("**Defendant Golden Corral**"), and alleges as follows:

## INTRODUCTION

1.     This case is about a pregnant 22-year-old, intellectually disabled cash attendant whose employer subjected her to an unrelenting hostile work environment before unlawfully terminating her because of her pregnancy, race and disability.

2.     Plaintiff Tiara Monds brings this action pursuant Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("**Title VII**") to redress the deprivation of her rights, privileges and immunities secured by Federal Law.  Plaintiff also brings this action pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("**Section 1981**"), Americans with Disabilities Act ("**ADA**"), and the Florida Civil Rights Act of 1992, §760.01, *et seq.*, Florida Statutes ("**FCRA**"), to redress the Defendant's unlawful employment practices.

3.     Plaintiff seeks monetary relief to redress Defendant Golden Corral's unlawful employment practices in violation of the Title VII, the Section 1981, the ADA, and the FCRA for

discriminating against Plaintiff because of her pregnancy (sex), race, and disability.  Plaintiff further seeks punitive damages against Defendant Golden Corral for intentionally, directly, and willfully depriving Plaintiff of her constitutional and civil rights motivated by evil intent and/or reckless or callous indifference to her federal rights.

4.      At bottom, Defendant is liable for depriving Plaintiff of her personal dignity and her civil and constitutional rights to pursue an equal employment opportunity in an environment free of relentless discrimination.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights), and §1367 (supplemental jurisdiction).

6.      This Court has jurisdiction of the state and local claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

7.      Venue is proper in the Southern District of Florida Miami Division under 28 U.S.C. § 1391(b) because the acts or omissions giving rise to this action occurred in the Southern District of Florida's jurisdiction. Defendant Golden Corral is and was located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district. Plaintiff was employed by Defendant within Miami-Dade County, Florida. Additionally, the events took place in Miami-Dade County, Florida.

## PROCEDURAL PREREQUISITES

8.      Plaintiff has complied with all statutory prerequisites to file this action.

9.    On or about October 29, 2020, Plaintiff Monds dual-filed charges with the Equal Employment Opportunity Commission ("**EEOC**") and Florida Commission on Human Relations ("**FCHR**"), against Defendant as set forth herein, Charge No. 510-2021-00624.

10.    An EEOC filing automatically operates as a FCHR filing.

11.    On or about August 10, 2021, the EEOC issued a right to sue letter, and this action is being commenced.

12.    This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter and more than one hundred eighty (180) days since the inception of Plaintiff's administrative action against the Defendant Golden Corral, and the FCHR has failed to make a determination of cause.

## PARTIES

13.    Plaintiff Tiara Monds is an individual, disabled black/African American woman residing in the State of Florida.

14.    At all times material, Defendant GC PARTNERS, INC. as and still is a foreign for-profit corporation duly authorized and existing by the virtues and laws of the State of Florida.

15.    At all times material, Defendant GC PARTNERS, INC. did and continues to do business as "Golden Corral."

16.    At all relevant times, Defendant Golden Corral owns and operates numerous "Golden Corral" restaurants in the United States, including in Florida City, Florida.

17.    At all relevant times, Mr. Carlos Bonilla (hereinafter referred to as "**Mr. Bonilla**") was employed by Golden Corral as the "General Manager" at the location in Florida City, Florida. Mr. Bonilla is a white/Hispanic male and held direct supervisory authority over Ms. Monds,

controlling various terms and conditions of Plaintiff's employment, including the ability to hire and fire Ms. Monds.

18.     At all relevant times, Mr. Steve Roqueta (hereinafter referred to as "**Mr. Roqueta**") was employed by the Defendant as the "Assistant Manager" at its Florida City, Florida location. Mr. Roqueta is a white/Hispanic male and held direct supervisory authority over Ms. Monds, controlling various terms and conditions of Plaintiff's employment, including the ability to hire and fire Ms. Monds.

19.     At all relevant times Hector Cifuentes (hereinafter referred to as "**Mr. Cifuentes**") was employed by Defendant as the "Kitchen Manager" at its Florida City, Florida location.  Mr. Cifuentes is a white/Hispanic male and held direct supervisory authority over Ms. Monds, controlling various terms and conditions of Plaintiff's employment, including the ability to hire and fire Ms. Monds.

20.     Defendant Golden Corral is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

21.     Defendant Golden Corral's exact number of employees is unknown, but upon information and belief, there are well more than the statutory minimum.

22.     At all material times, Plaintiff was employed by the Defendant Golden Corral at its Florida City location.

## FACTUAL ALLEGATIONS

23.     Plaintiff Tiara Monds is a 23-year-old disabled, black/African American woman.

24.     In or around March 2018, Defendant Golden Corral hired Ms. Monds as a "Cashier and Frontline Attendant," specifically at to work in Defendant Golden Corral's restaurant location in Florida City, Florida.

25.     Ms. Monds has a diagnosed learning disability and Attention-deficit/Hyperactivity Disorder ("ADHD"), which Defendant Golden Corral was aware about at all relevant times.  Ms. Mond's mother (Ms. Shanay Monds), advised the General Manager at the time, Jim Feliciano regarding her daughter diagnosis. To accommodate her diagnosis, Mr. Feliciano allowed Ms. Monds' to shadow other employees in an effort to learn the cash register. After time, Ms. Monds' became proficient and was able to work solo on the cash-register.

26.     Due to Ms. Mond's learning disability, her mother (Ms. Shanay Monds) often assists Plaintiff with certain daily living activities, and regularly interacted with Defendant Golden Corral's management team on behalf of Plaintiff for work related issues.

27.     Beginning sometime in or about mid-January 2020 and continuing throughout the remainder of her employment with Defendant, Ms. Monds was frequently humiliated and subjected to the use of repeated derogatory racial comments by Mr. Cifuentes.

28.     In particular and no way meant to be an exhaustive list, Mr. Cifuentes took it upon himself to refer to Ms. Monds almost exclusively as "**the black girl**" despite having worked together for nearly two years and being fully aware of Ms. Monds' legal name.

29.     In fact, Ms. Monds was made aware by her colleagues to Mr. Cifuentes referred to Ms. Monds' exclusively both in her presence as well as when referring or discussing her with her colleagues outside her presence.

30.     Ms. Monds was not only humiliated but felt dehumanized by the use of this derogatory and offensive name calling by her manager.

31.     On or about January 6, 2020, Ms. Monds excitedly learned that she was pregnant. Within the proceeding immediate days, Ms. Monds immediately thereafter informed Defendant Golden Corral's management team of her pregnancy.

32.     While she was excited for the future that was soon to come, Ms. Monds' pregnancy was met with some unexpected medical difficulties as well as compounded by disrespect and interference by her managers.

33.     On or about January 29, 2020, Ms. Monds began experiencing excessive vaginal bleeding related to her pregnancy. Fearful for the safety and wellbeing of both herself and her unborn child, Ms. Monds went to the Homestead Hospital Emergency Room for immediate care.

34.     Following her evaluation and as a direct result of her medical condition and pregnancy, Ms. Monds' doctor imposed minor work-related restrictions on Ms. Monds until the delivery of her baby.

35.     In particular, per her doctor's instructions, the work activities "not tolerated" included:  lifting more than 10 pounds, prolonged standing, reaching, pushing, pulling, heavy lifting, and high reaching.  As such, per her doctor's orders, Ms. Monds was restricted to "light duty work only."

36.     Furthermore, Ms. Monds was also instructed by her doctor to remain at home and not return to work until at least February 4, 2020.

37.     On or about January 30, 2020, Ms. Monds, by and through her mother, notified Defendant Golden Corral of her need for a reasonable accommodation by providing a detailed note to Mr. Roqueta. Ms. Monds' doctor articulated Ms. Monds' need for accommodation due to medical complications arising from her pregnancy.  Mr. Roqueta approved Ms. Monds' request for time off and assured Ms. Monds' mother that Defendant Golden Corral would implement the requested accommodations upon her return.

38.     Feeling reassured, Plaintiff Monds recuperated at home and focused on returning to full strength.

39.     On or around February 4, 2020, in accordance with her requested accommodation and doctor's instructions, Ms. Monds returned to work.

40.     Upon return to work, Ms. Monds was immediately met with increased hostility directed at her by her managers.

41.     By means of example and not meant to be an exhaustive list, Mr. Cifuentes frequently refused to acknowledge Ms. Monds' approved accommodation, instead requiring Ms. Monds to prefer repeated tasks that put an excessive and dangerous risk to by Ms. Monds and her unborn child.

42.     On at least two occasions, Mr. Cifuentes required Ms. Monds to manually clear the windows at the restaurant, requiring Ms. Monds to lift and reach above her head for an extended period of time.

43.     At all times material, Ms. Monds would politely remind Mr. Cifuentes of her accommodation but he continued to disregard her concerns. In fact, when she would remind Mr. Cifuentes, he would become openly aggressive and angry with Ms. Monds, asserting that it was "part of her job" despite no previous requirement to do such.

44.     Furthermore, Mr. Cifuentes refused to provide Ms. Monds the approved chair for her to take breaks during her shift, instead requiring that she stand throughout her shift.

45.     Furthermore, Ms. Monds was required to manually sweep the restaurant with a short broom which required her to bend and lean for an extended time. Plaintiff Monds requested a vacuum, as the vacuum onsite was broken, but was again denied her simple request.

46.     Ms. Monds complained to Mr. Cifuentes about the ongoing refusal to accommodate her to no avail. Inevitably, Ms. Monds chose to loop her mother in on her concerns.

47.     Ms. Monds' mother thereafter attempted to engage with Defendant Golden Corral regarding the medical needs of her daughter. Ms. Shanay Monds called Mr. Cifuentes and complained about his refusal to acknowledge and enforce the approved medical accommodations for her daughter. Mr. Cifuentes became abrasive and defensive towards Ms. Shanay Monds, directly her instead to Mr. Bonilla.

48.     Upon this instruction, Ms. Shanay Monds made numerous attempts to speak to Mr. Bonilla but he refused to speak with her.

49.     On or around February 5, 2020, having spent the prior day performing extensive manual labor despite her reasonable accommodation, Ms. Monds became ill at work. Ms. Monds began suffering from nausea and was repeatedly vomiting throughout her shift.

50.     Shortly before the end of her shift, Ms. Monds advised Mr. Cifuentes of her symptoms and requested she be permitted to leave early. Mr. Cifuentes responded, stating that if Ms. Monds wanted to leave early, she must find shift coverage. Mr. Cifuentes knowingly placed this unreasonable burden on Ms. Monds, knowing the evening shift was set to end shortly.

51.     Ms. Monds again insisted that she was sick and vomiting, to which Mr. Cifuentes callously responded, "then go to the restaurant and return to work."

52.     Ms. Monds again looped her mother in at which point her mother called Mr. Cifuentes who thereafter agree to let Ms. Monds' leave early. At all times material, Mr. Cifuentes actively made Ms. Monds jump through unnecessary hoops only to thereafter relent once her mother was involved. Mr. Cifuentes refused to engage respectfully directly with Ms. Monds.

53.     On or around February 13, 2020, Ms. Monds advised Mr. Roqueta of her need to take the following day, February 14, 2020, off as a result of an upcoming doctor's appointment. Mr. Roqueta approved the request without consequence.

54.     On or around February 16, 2020, Ms. Monds reported to her previously scheduled shift with a note reflecting her doctor's appointment from February 14, 2020.

55.     Upon arriving to work, Defendant Golden Corral, by and through Mr. Bonilla, Mr. Roqueta, and Mr. Cifuentes unlawfully terminated Ms. Monds. Defendant Golden Corral unlawfully terminated Ms. Monds because of her pregnancy, disability and requests for a reasonable accommodation.

56.     The above are just some of the examples Defendant subjected Plaintiff to on a repeated an ongoing basis.

57.     Defendant unlawfully discriminated against Plaintiff because of her sex and failed to accommodate her pregnancy and disability.

58.     Plaintiff claims a continuous practice of discrimination and claims that Defendant are subjecting her to continuing violations and makes all claims herein under the continuing violations doctrine.

59.     Plaintiff claims aggravation, activation, and/or exacerbation of any preexisting conditions.

60.     As a result of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities with Defendant, and continues to suffer the same.

61.     Plaintiff seeks punitive damages against Defendant for willfully violated Plaintiff's clearly established rights by depriving Plaintiff of her civil right to pursue an equal employment opportunity in an environment free of sex discrimination.

62.     Plaintiff has also suffered emotional distress, mental anguish, loss of personal dignity, and other intangible damages.

63.     At bottom, Defendants are liable for intentionally depriving Ms. Monds of her clearly established rights secured by federal and state law.

## CAUSES OF ACTION

### COUNT I
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e
### *Pregnancy/Gender Discrimination (Disparate Treatment)*

64.     Plaintiff reincorporates the allegations in paragraphs 23-63.

65.     The Title VII prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her sex/pregnancy.

66.     More specifically, Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

67.     Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her sex/pregnancy.

68.     Defendant Detention Golden Corral, by and through its agent Ms. Gholston, altered the terms and conditions of Plaintiff's employment by disregarding Plaintiff's pregnancy accommodations, by refusing Plaintiff to work light duty, by assigning Plaintiff to the most dangerous tasks in direct opposition to Plaintiff's requested accommodation, and by forcing her to perform extensive manual labor, lift above her head, bend and stand throughout her shift despite her doctor provided accommodations.

69.    Defendant Golden Corral, by and through its agents, unlawfully terminated Plaintiff because of her sex/pregnancy.

70.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

71.    As a result of Defendant Golden Corral's unlawful employment practices in violation of the Title VII, Plaintiff has suffered damages.

72.    As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

73.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

74.    Plaintiff has been damaged by the illegal conduct of Defendant.

## COUNT II
### FCRA, § 760.10(1)(a)
### *Pregnancy/Gender Discrimination (Disparate Treatment)*

75.    Plaintiff reincorporates the allegations in paragraphs 23-63.

76.    The FCRA prohibits employers from discriminating against the terms, conditions, or privileges of an individual's employment because of her sex.

77.    More specifically, Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

78.    Defendant engaged in unlawful employment practices prohibited by FCRA § 760.10(1)(a), by discriminating against Plaintiff because of her sex/pregnancy.

79.    Defendant Detention Golden Corral, by and through its agent Ms. Gholston, altered the terms and conditions of Plaintiff's employment by disregarding Plaintiff's pregnancy accommodations, by refusing Plaintiff to work light duty, by assigning Plaintiff to the most dangerous tasks in direct opposition to Plaintiff's requested accommodation, and by forcing her to perform extensive manual labor, lift above her head, bend and stand throughout her shift despite her doctor provided accommodations.

80.    Defendant Golden Corral, by and through its agents, unlawfully terminated Plaintiff because of her sex/pregnancy.

81.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under FCRA § 760.10(1)(a).

82.    As a result of Defendant Golden Corral's unlawful employment practices in violation of the FCRA § 760.10(1)(a), Plaintiff has suffered damages.

83.    As a result of Defendant's violations of FCRA § 760.10(1)(a), Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

84.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

85.    Plaintiff has been damaged by the illegal conduct of Defendant.

<u>**COUNT III**</u>
**42 U.S. Code § 12111**
*Disability Discrimination (Disparate Treatment)*

86.    Plaintiff reincorporates the allegations in paragraphs 23-63.

87.    The ADA makes it unlawful for an employer to discriminate against an employee based on that person's disability. 42 U.S.C. §12112.

88.    42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

89.    Further, 42 U.S.C. §12112(b)(4) provides that "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association" is a prohibited form of discrimination.

90.    Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

91.    Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's disability.

92.    In subjecting Plaintiff to adverse employment action on the basis of her disability, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

93.     At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff Arriola in the terms and conditions of her employment because of his disability, and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her disability in violation of the ADA.

94.     Defendant violated the ADA by unlawfully discharging and discriminating against Plaintiff based her disability, of which the Defendant was fully aware of.

95.     As a result of Defendant's intentional discriminatory conduct and wrongful termination of Plaintiff's employment in violation of the ADA, Plaintiff Arriola has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

96.     Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

97.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA.  Accordingly, Plaintiff also requests punitive damages as authorized by the ADA.

98.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

99.     Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

100.    Plaintiff Monds has been damaged by Defendant's illegal conduct.

<u>**COUNT IV**</u>
**42 U.S. Code § 12111**
***Disability Discrimination (Failure to Accommodate)***

101.    Plaintiff reincorporates the allegations in paragraphs 23-63.

102.    The ADA prohibits employers from denying an individual's reasonable accommodations for a disability.

103.    42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

104.    Further, 42 U.S.C. §12112(b)(5)(A) provides that "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."

105.    Defendant discriminated against Plaintiff because of her disability by denying her multiple accommodation requests.

106.    Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests via her medical practitioners and via her mother.

107.    Defendant, by and through its employees, failed to respond to Plaintiff's multiple requests for a reasonable accommodation despite assertions of their willingness to do so.

108.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

109.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide a reasonable accommodation or participate in the interactive process.

110.    As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

111.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

112.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

113.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

114.    Plaintiff has been damaged by Defendant's illegal conduct.

**COUNT V**
**42 U.S. Code § 12111**
*Disability Discrimination (Retaliation)*

115.    Plaintiff reincorporates the allegations in paragraphs 23-63.

116.     The ADA (29 U.S.C. §12203(a)) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

117.     At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

118.     Plaintiff participated in a protected activity when she requested and repeatedly renewed her request for a reasonable accommodation despite receiving no response or update. *Ponce v. City of Naples*, No. 2:17-CV-137-FTM-99CM, 2017 WL 2692829 (M.D. Fla. June 22, 2017); *Vargas v. Fla. Crystals Corp.,* No. 16-81399-CIV, 2019 WL 8955114 (S.D. Fla. May 13, 2019); *Earl v. Mervyns, Inc.*, 207 F.3d 1361 (11th Cir. 2000).

119.     Defendant, by and through its supervisors/management, failed to provide Plaintiff a reasonable accommodation or engage in the interactive process despite Plaintiff's attempts to engage throughout January and February 2020.

120.     Defendant further retaliated against Plaintiff by unlawfully terminating Plaintiff's employment.

121.     Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

122.     Plaintiff has been damaged by Defendant's illegal conduct.

**COUNT VI**
**FCRA, § 760.10(1)(a)**
***Disability Discrimination (Disparate Treatment)***

123.     Plaintiff reincorporates the allegations in paragraphs 23-63.

124.    Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

125.    Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer…to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

126.    Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's disability.

127.    In subjecting Plaintiff to adverse employment action on the basis of her disability, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

128.    At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff Arriola in the terms and conditions of her employment because of his disability, and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her disability in violation of the FCRA.

129.    Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her disability, of which the Defendant was fully aware of.

130.    As a result of Defendant's intentional discriminatory conduct and wrongful termination of Plaintiff's employment in violation of the FCRA, Plaintiff Arriola has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

131.   Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

132.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.  Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

133.   Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

134.   Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

135.   Plaintiff has been damaged by Defendant's illegal conduct.

## COUNT VII
### FCRA, § 760.10(1)(a)
### *Disability Discrimination (Reasonable Accommodation)*

136.   Plaintiff reincorporates the allegations in paragraphs 23-63.

137.   The FCRA prohibits employers from denying an individual's reasonable accommodations for a disability.

138.   Defendant discriminated against Plaintiff because of her disability by denying her multiple accommodation requests.

139.   Defendant, by and through its employees, was put on notice of Plaintiff's disability and need for reasonable accommodation when it received Plaintiff's numerous requests via her medical practitioners and via her mother.

140.    Defendant, by and through its employees, failed to respond to Plaintiff's multiple requests for a reasonable accommodation despite assertions of their willingness to do so.

141.    Defendant would suffer no undue hardship by granting Plaintiff's reasonable accommodation request, upon information and belief, similarly situated individuals were granted the accommodation Plaintiff lawfully and reasonably sought.

142.    At all times relevant, Defendant, by and through its supervisors/management, intended to unlawfully discriminate against Plaintiff by failing to provide a reasonable accommodation or participate in the interactive process.

143.    As a result of Defendant's intentional discriminatory conduct and unlawful termination of Plaintiff's employment, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.  Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

144.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

145.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

146.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

147.    Plaintiff has been damaged by Defendant's illegal conduct.

## COUNT VIII
### FCRA, § 760.10(1)(a)
### *Disability Discrimination (Retaliation)*

148.    Plaintiff reincorporates the allegations in paragraphs 23-63.

149.    The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

150.    Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

151.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff Arriola possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

152.    Plaintiff participated in a protected activity when she renewed her request for a reasonable accommodation despite receiving no response or update. \

153.    Defendant, by and through its supervisors/management, failed to provide Plaintiff a reasonable accommodation or engage in the interactive process despite Plaintiff's attempts to engage.

154.    Defendant further retaliated against Plaintiff by refusing to assign work assignments to Plaintiff after her initial request for accommodation.

155.    Defendant, by and through its supervisors/management, terminated Plaintiff's employment.

156.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under state law.

157.    Plaintiff has been damaged by Defendant's illegal conduct.

## COUNT IX
### 42 U.S.C. § 1981
### *Race Discrimination (Hostile Work Environment)*

158.    Plaintiff reincorporates the allegations in paragraphs 23-63.

159.    42 U.S. Code § 1981 - Equal rights under the law states provides:

(1) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(2) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(3) The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

160.    Defendant engaged in unlawful employment practices that violated 42 U.S.C §1981, by discriminating against Plaintiff on account of Plaintiff being of black/African American race.

161.    Defendant violated Section 1981 by intentionally discriminating against Plaintiff in a serious tangible way with respect to compensation, terms, conditions or privileges of her employment.

162.    Defendant's harassment and highly offensive conduct to Plaintiff on account of Plaintiff's race adversely affected the terms, conditions, and privileges of Plaintiff's employment.

163.    Defendant's conduct was adequately severe and pervasive so as to alter the work environment and create an abusive and hostile work environment for Plaintiff.

164.    Defendant acted upon a continuing course of conduct.

165.    Plaintiff's race characteristics were a determinative or motivating factor in Defendant's employment actions.

166.    Plaintiff's protected status played a motivating part in the Defendant's decisions even if other factors may also have motivated Defendant's actions against Plaintiff.

167.    Defendant enforced a purposefully discriminatory pattern and practice of depriving Plaintiff, of the equal rights afforded to her, in violation of 42 U.S.C. §1981.

168.    Defendant violated Section 1981, and Plaintiff suffered numerous damages as a result.

169.    Plaintiff makes her claim against Defendant under all of the applicable paragraphs of 42 U.S. Code § 1981.

170.    As a result of Defendant's violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship, which provided substantial compensation and benefits to the Plaintiff.

171.    As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

172.   As a result of Defendant's violations of Section 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

173.   Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

174.   Plaintiff has been damaged by the illegal conduct of Defendant.

## COUNT X
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e
### *Race Discrimination (Hostile Work Environment)*

175.   Plaintiff reincorporates the allegations in paragraphs 23-63.

176.   The Civil Rights Act of 1964 prohibits inappropriate conduct in the workplace which leaves any person feeling harassed or discriminated against, due to his or her gender, age, religion, national origin or race.

177.   Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

178.   Defendant's Manager harassed Plaintiff based on her race/color, including targeting Plaintiff with derogatory and harassing comments based on her race.

179.   The harassment of Plaintiff included, but was not limited to, harshly criticizing Plaintiff's performance, accusing Plaintiff of embezzlement more than one year after the end of her employment, defrauding Plaintiff, and causing Plaintiff's constructive discharge.

180.    The harassing actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.  In subjecting Plaintiff to adverse employment action on the basis of her race/color, Defendant intentionally harassed Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

181.    The harassing conduct was directly connected to Plaintiff's race.

182.    When Plaintiff voiced her objections to this harassing and discriminatory treatment, Defendant failed to address her concerns.

183.    Individuals outside of Plaintiff's protected class were treated more favorably than Plaintiff.

184.    Plaintiff did not welcome Defendant's harassing conduct or comments.

185.    Defendant abused their supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. Monds' working environment would believe Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

186.    As a result of Defendant's violations of The Civil Right Act of 1964, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

187.    Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

188.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

189.    Plaintiff has been damaged by the illegal conduct of Defendant.

**COUNT XI**
**FCRA, § 760.10(1)(a)**
***Race Discrimination (Hostile Work Environment)***

190.    Plaintiff reincorporates the allegations in paragraphs 23-63.

191.    The FCRA prohibits employment discrimination based on race/color and prohibits

harassment based on these protected characteristics.

192.    Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment

practice for an employer…to discriminate against any individual with respect to compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, pregnancy, national origin, age, handicap, or marital status."

193.    Defendant's relentless harassment, ridicule, and humiliation over Plaintiff's

objection as described and set forth above, including constant discrimination, harassing comments,

threats, and Defendant's failure to take corrective action altered the terms and conditions of

Plaintiff's employment, and created a hostile work environment in violation of the FCRA.

194.    Defendant violated the FCRA by unlawfully constructively discharging,

discriminating against, and harassing Plaintiff based her race/color, of which the Defendant was

fully aware.

195.    Plaintiff suffered an adverse employment action when she was constructively

discharged from Defendant.

196.    The harassment and discrimination directed at Plaintiff was sufficiently severe and

pervasive so as to unreasonably interfere with her physical and/or psychological health, work

performance and to create and intimidating, hostile and offensive working environment.

197.    Individuals outside of Plaintiff's protected class were treated more favorably than Plaintiff.

198.    As a result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

199.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.   Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

200.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

201.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under state law.

202.    Plaintiff has been damaged by the illegal conduct of Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial, plus interests, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, disbursements of action; and for such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial of all issues to be tried.

Dated: November 8, 2021

Respectfully Submitted,

By: /s/ Caroline H. Miller
Caroline H. Miller, Esq.
**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Ave., Suite 1310
Miami, Florida 33131
(305) 946-1884